FILED

Mar 15 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

DANIEL S. KAHN (NYBN 4196143)
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

AVI PERRY (NYBN 5035886)
Acting Principal Assistant Chief

MATTHEW F. SULLIVAN (NYBN 4785952)
Trial Attorney

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> EMILIO JOSE HEREDIA COLLADO <br> a/k/a EMILIO HEREDIA, <br><br> Defendant. | CASE NO. 3:21-cr-00109 CRB <br><br> VIOLATION: <br> 18 U.S.C. § 371 – Conspiracy <br><br> SAN FRANCISCO VENUE |

I N F O R M A T I O N

The United States of America charges:

COUNT ONE:          (18 U.S.C. § 371 – Conspiracy)

1. In or about 1998, the defendant, EMILIO JOSE HEREDIA COLLADO a/k/a EMILIO HEREDIA ("HEREDIA"), began working as a trader in the San Francisco, California office of Company A, an international oil trading company. From in or about 2010 through in or about 2014, HEREDIA was the Vice President of Trading for the Americas at Company A. In that role, HEREDIA was the head of Company A's North and South American trading and was responsible for, among other things, the purchase and sale of fuel oil at the Ports of Long Beach and Los Angeles. HEREDIA remained in that position through in or about 2014, when Company A was acquired by Company B, a multinational commodity trading company. After the acquisition in or about 2014, HEREDIA continued to work as a trader at Company B's office in San Francisco, and his trading remained focused on purchasing and selling

INFORMATION

products on the West Coast of the United States, including fuel oil.

2. From in or about September 2012 through in or about August 2016, while employed at Company A, and later at Company B, HEREDIA did knowingly and willfully conspire and agree with other employees at Company A, and later at Company B, to manipulate the price of a commodity in interstate commerce, namely, fuel oil, in violation of Title 7, United States Code, Section 13(a)(2).

<u>The Purpose of the Conspiracy</u>

3. The purpose of the conspiracy was for HEREDIA and his co-conspirators to unlawfully enrich themselves, Company A, and Company B by increasing profits and reducing costs on private, bilateral contracts for fuel oil between Company A or Company B and one particular counterparty, Company C, where the price terms of those contracts were set by reference to the daily benchmark price assessment published by S&P Global Platts ("Platts") for intermediate fuel oil 380 CST at the Port of Los Angeles ("Los Angeles 380 CST Bunker Fuel") on a certain day or days plus or minus a fixed premium.

<u>Manner and Means of the Conspiracy</u>

4. The manner and means by which HEREDIA and his co-conspirators sought to accomplish and did accomplish the purpose of the conspiracy included the following:

 a. HEREDIA directed certain of his co-conspirators to submit to Platts orders to buy and sell ("bids" and "offers") fuel oil during a designated daily 30- to 45-minute period (the "Platts Window") that was part of Platts' Market-on-Close process for assessing the price of various oil products, including Los Angeles 380 CST Bunker Fuel, with the intent to cause an artificial price, that is, with the intent to push the price assessment up or down artificially so that the price of fuel oil bought from and sold to Company C did not reflect legitimate forces of supply and demand, and to increase the profitability of contracts between Company A or Company B and Company C that were priced by reference to the Platts Los Angeles 380 CST Bunker Fuel price assessment.

  i. More specifically, if Company A or Company B had a contract to buy fuel oil from Company C, and the contract was priced by reference to the Platts Los Angeles 380 CST Bunker Fuel price assessment, it was in the interest of HEREDIA, his co-conspirators, and Company A or Company B for the Platts Los Angeles 380 CST Bunker Fuel price assessment to be as low as possible. In these circumstances, HEREDIA

directed his co-conspirators to submit offers to Platts during the Platts Window for the express purpose of pushing down the price assessment, and hence the price of fuel oil bought from Company C, artificially and in a manner that did not reflect legitimate forces of supply and demand.

　　　　　ii.　　　Conversely, if Company A or Company B had a contract to sell fuel oil to Company C, and the contract was priced by reference to the Platts Los Angeles 380 CST Bunker Fuel price assessment, it was in the interest of HEREDIA, his co-conspirators, and Company A or Company B for the Platts Los Angeles 380 CST Bunker Fuel price assessment to be as high as possible.  In these circumstances, HEREDIA directed his co-conspirators to submit bids to Platts during the Platts Window for the express purpose of pushing up the price assessment, and hence the price of fuel oil sold to Company C, artificially and in a manner that did not reflect legitimate forces of supply and demand.

　　　b.　　　HEREDIA directed his co-conspirators to submit bids and offers to Platts during the Platts Window for Los Angeles 380 CST Bunker Fuel for the purpose of artificially affecting the benchmark price assessment, and hence the price of fuel oil bought from and sold to Company C, and not for any legitimate economic reason.

Overt Acts

5.　　　In furtherance of the conspiracy and to effect its unlawful object, in the Northern District of California and elsewhere, HEREDIA and his co-conspirators committed and caused to be committed at least one of the following overt acts, among others:

　　　a.　　　In or about late August 2016, Company B had a private, bilateral contract to purchase a total of approximately 45,735 metric tons of fuel oil from Company C.  The price term of the contract was set by reference to the Platts Los Angeles 380 CST Bunker Fuel price assessment minus a fixed premium over a period of five business days between on or about August 23, 2016, and on or about August 29, 2016 (meaning that Company B's exposure was approximately 9,147 metric tons on each of the five pricing days).  On each of the five pricing days, at HEREDIA's direction, a co-conspirator submitted one or more offers to Platts and subsequently lowered the price of the offer(s) more than 40 times during the Platts Window for

INFORMATION　　　　　　　　　　　　　　　　3

Los Angeles 380 CST Bunker Fuel with the intent to push down the price assessment, and hence the price of fuel oil bought from Company C, artificially in order to reduce the cost to Company B of purchasing fuel oil from Company C.

b.      As one example, on or about August 24, 2016—which was one of the five pricing days—at HEREDIA's direction, a co-conspirator submitted an offer to Platts and subsequently lowered the price 41 times during the Platts Window for Los Angeles 380 CST Bunker Fuel with the intent to push down the price assessment, and hence the price of fuel oil bought from Company C, artificially, and with the effect of moving down the price from an initial peg of $245 per metric ton to a final price assessment of $204.50 per metric ton, resulting in an unlawful gain of hundreds of thousands of dollars to Company B from that day's manipulation.

All in violation of Title 18, United States Code, Section 371.

DATED:  March 15, 2021

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

_____
AVI PERRY
Acting Principal Assistant Chief

MATTHEW F. SULLIVAN
Trial Attorney

INFORMATION                                                4