GLENN S. LEON
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

AVI PERRY (NYBN 5035886)
Deputy Chief

MATTHEW F. SULLIVAN (NYBN 4785952)
JOHN J. LIOLOS (NYBN 5331053)
Trial Attorneys

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>EMILIO JOSE HEREDIA COLLADO<br>     a/k/a EMILIO HEREDIA,<br><br>          Defendant. | Case No. 3:21-CR-00109 CRB<br><br>UNITED STATES' SENTENCING<br>MEMORANDUM<br><br>Sentencing Date:     March 22, 2023<br>Hearing Time:        11:00 a.m.<br>Court:               Hon. Charles R. Breyer |

The United States of America, through its undersigned attorneys, respectfully submits this sentencing memorandum in connection with the sentencing of the defendant, Emilio Jose Heredia Collado. For the reasons set forth below, including the defendant's cooperation with the United States, the nature and circumstances of his offense, and the other pertinent factors set forth in 18 U.S.C. § 3553(a), the United States recommends that this Court impose a sentence significantly below the advisory Sentencing Guidelines range of 30 to 37 months. Specifically, the United States respectfully recommends that the Court impose a sentence of 24 months' probation, 6 months' home confinement, and a $20,000 fine.

## I.    Offense Conduct

The defendant's offense conduct is set forth in the Presentence Investigation Report ("PSR") and paragraph 2 of the defendant's Plea Agreement.  Further detail regarding the offense conduct also appears in paragraphs 5 through 23 of the Statement of Facts in the plea agreement for the defendant's former employer, Glencore, Ltd., which was entered in a related case.  *See* Plea Agr. Attach. A ¶¶ 5-23, *United States v. Glencore Ltd.*, 22-cr-71, ECF No. 18 (D. Conn. May 24, 2022) (attached for reference as Appendix A).  Given these various sources, only the relevant details are summarized here.

As background, the defendant worked in San Francisco, California as a fuel oil trader from 1998 to 2014 at Chemoil Corporation[1], an international oil trading company, and then from 2014 to February 2021 at Glencore Ltd.[2], a subsidiary of the multinational commodity trading company Glencore plc, after Glencore plc had acquired Chemoil.[3]  In his role as a fuel oil trader, the defendant was responsible for, among other things, buying and selling fuel oil at the Port of Los Angeles, one of the busiest shipping ports in the United States by container volume.  As part of its business trading fuel oil, Glencore entered into contracts to buy and sell physical fuel oil where the price terms of the contracts were set by reference to a benchmark price assessment that was published daily by S&P Global Platts ("Platts").  In particular, the defendant entered into contracts to buy or sell fuel oil on Glencore's behalf with P.M.I. Trading Ltd. ("PMI")[4], which was the trading arm of Petróleos Mexicanos ("PEMEX"), Mexico's national oil company.  The price terms of the PMI contracts were set by reference to the Platts daily benchmark price assessment for intermediate fuel oil 380 CST at the Port of Los Angeles ("L.A. Bunker Fuel") on a certain day or days plus or minus a fixed premium.

Platts daily price assessments were meant to reflect the prevailing market price at a point in time for the specific product that was the subject of the assessment (*e.g.*, L.A. Bunker Fuel), and Platts price assessments were used by market participants to calculate pricing formulas in certain contracts.  In

---

[1] "Company A" in the Plea Agreement and Information.

[2] "Company B" in the Plea Agreement and Information.

[3] References in this sentencing memorandum to "Glencore" will incorporate the defendant's employment at Chemoil and Glencore unless otherwise noted.

[4] "Company C" in the Plea Agreement and Information.

formulating the daily price assessments for a given product, Platts used, among other things, a Market-on-Close process in which Platts reviewed orders to buy and sell ("bids" and "offers," respectively) submitted by market participants to Platts during designated daily 30- to 45-minute periods (the "Platts Window"). Platts also solicited information regarding current market conditions from market participants, which informed, among other things, where Platts set the initial starting price for trading in the Platts Window (*i.e.*, the "peg") as well as the price assessment published after the close of the Platts Window.

Between September 2012 and August 2016, the defendant engaged in a conspiracy to manipulate the Platts daily benchmark price assessment for L.A. Bunker Fuel.  On multiple occasions, fuel oil salespeople at Glencore, which the defendant supervised and who acted at his direction, submitted bids and offers to Platts during the Platts Window.  The salespeople submitted these bids and offers with the intent to push the L.A. Bunker Fuel price assessment up or down artificially so that the L.A. Bunker Fuel price assessment did not reflect legitimate market-based forces of supply and demand.  They did this in order to unlawfully enrich themselves and Glencore by increasing the profitability on Glencore's contracts for fuel oil—including the contracts with PMI—that were priced by reference to the L.A. Bunker Fuel price assessment on certain days (typically, the days before, on, and after the fuel oil was delivered from the buyer to the seller).  For example, if Glencore had a contract to sell fuel oil to PMI, Heredia would direct his co-conspirators to place bids in the Platts Window for the L.A. Bunker Fuel price assessment with the intent to artificially push up the price assessment and thereby increase the price for the fuel oil sold to PMI.  In addition to submitting the bids and offers in the Platts Window, at the defendant's direction, the salespeople also made false and misleading statements to reporters at Platts about the current state of the market with the goal of influencing the L.A. Bunker Fuel price assessment, since market color was one source of information that Platts considered when setting its price assessment.  The false statements to Platts would not reflect the salespeople's genuine assessment of market conditions, but rather presented a distorted impression of supply and demand in order to artificially move the Platts price assessment in a direction that would benefit Glencore.

## II.    The Advisory Sentencing Guidelines Range

As set forth in the PSR, under U.S.S.G. § 2B1.1(a)(2), the defendant's base offense level is 6.  PSR ¶ 25.  In the defendant's Plea Agreement, the parties agreed that the amount of loss from the defendant's offense conduct cannot reasonably be determined and therefore gain should be used as a reasonable alternative measure of loss.  That gain amount is based upon a reasonable approximation of the amount of the defendant's bonus compensation that he derived from the increased profits on the PMI fuel oil contracts arising from the manipulation of the L.A. Bunker Fuel price assessment—specifically, more than $1.5 million, but less than $3.5 million—and results in a 16-level increase pursuant to § 2B1.1(b)(1)(I).  PSR ¶ 26.  After a reduction for timely acceptance of responsibility,[5] the defendant's final adjusted offense level is 19, resulting in a Guidelines-recommended sentencing range (at Criminal History Category I) of 30 to 37 months.  PSR ¶¶ 32-34, 38, 62.  As set forth in the United States § 5K1.1 motion for downward departure, which is being filed concurrently with this sentencing memorandum, the United States moves the Court to depart significantly below the low end of the Guidelines range based on, among other factors, the substantial assistance that the defendant provided to the United States.

## III.   Application of the 18 U.S.C. § 3553(a) Factors

The overarching goal of a sentencing court is to impose a sentence that is sufficient to "reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment." *United States v. Ressam*, 679 F.3d 1069, 1088-89 (9th Cir. 2012) (en banc); 18 U.S.C. § 3553(a)(2).  The Court should begin the sentencing process by correctly calculating the applicable Guidelines range and must "remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).  The Court should then consider the factors outlined in 18 U.S.C. § 3553(a) to determine the appropriate sentence. *Ressam*, 679 F.3d at 1089.

---

[5] The defendant has assisted authorities in the investigation and prosecution of his own misconduct by timely notifying authorities of his intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently. Therefore, the United States moves the Court, under Guidelines § 3E1.1(b), to grant the defendant an additional one-level reduction in the offense level for his acceptance of responsibility.

Notwithstanding the PSR's accurate Guidelines determination, several of the § 3553(a) factors bear on the appropriate sentence in this case.  These factors support a sentence of 24 months' probation, 6 months' home confinement, and a $20,000 fine, which would reflect the seriousness of the offenses, promote respect for the law, provide for just punishment for the offenses, avoid unwarranted sentencing disparities, and deter others, while also accounting for the defendant's substantial assistance provided to the United States.

### A.    Nature and Circumstances of the Offense

The nature and circumstances of the defendant's offense weighs in favor of the United States' recommended sentence.  On the one hand, the defendant engaged in a conspiracy to manipulate the L.A. Bunker Fuel market for several years that allowed the defendant and Glencore to unlawfully gain by selling at artificially high, or buying at artificially low, prices, and that caused other market participants to buy and sell L.A. Bunker Fuel at artificially high or low prices.  The defendant oversaw the salespeople who, at his direction, submitted the bids and offers during the Platts Window, and made false statements to Platts about current market conditions, for the purpose of artificially affecting the L.A. Bunker Fuel price assessment.  On the other hand, however, the defendant has accepted responsibility for his actions, fully acknowledged his role in the offense conduct, and expressed regret for his actions.

### B.    Defendant's History and Characteristics

The PSR provides background about the defendant's history and characteristics, including aspects of the defendant's employment, education, and family situation.  The United States believes that an important mitigating factor is the defendant's choice to cooperate with the United States.  The full extent of the substantial assistance that the defendant provided to the United States is discussed in the United States § 5K1.1 motion for downward departure.

### C.    Seriousness of the Offense, Respect for the Law, and Just Punishment

The Guidelines appropriately reflect the seriousness of the defendant's offense, which involved a conspiracy to engage in unlawful trading that was meant to manipulate the markets to the detriment of other market participants.  In particular, the 16-level increase under § 2B1.1(b)(1)(I) arises from the gain to the defendant himself from the offense (*i.e.*, over $1.5 million and less than $3.5 million), and not for

1   Glencore's total gain from the overall scheme, which was over $155 million and would have resulted in a

2   26-level increase.  *See* Plea Agr. Attach. A ¶¶ 20, 23, *United States v. Glencore*, 3:22-cr-71, ECF No. 18

3   (D. Conn. May 24, 2022).  Further, a sentence of 24 months' probation, six months of home confinement,

4   and a $25,000 fine will promote respect for the law and provide for just punishment because they will

5   demonstrate that the defendant is being punished for his offense, notwithstanding a significant downward

6   departure that resulted in no term of imprisonment.

7           **D.      Adequate Deterrence to Criminal Conduct**

8           The United States believes that there is no need for further, specific deterrence of the defendant

9   and that the defendant will not engage in further criminal activity.  Although his crime was serious, the

10  defendant accepted responsibility, cooperated with the United States, complied with his release conditions,

11  and has no other criminal history.  In addition to his guilty plea in this case, the defendant will be

12  specifically deterred by the collateral consequences of his felony conviction as well as the permanent ban

13  from trading in CFTC-regulated markets and $100,000 civil monetary penalty that was part of his

14  resolution of the CFTC's parallel investigation.  *See* Order Instituting Proceedings Pursuant to Section

15  6(c) and (d) of the Commodity Exchange Act, Making Findings, and Imposing Remedial Sanctions, *In*

16  *the Matter of Emilio José Heredia Collado* (CFTC Docket No. 21-04 Mar. 25, 2021).

17          **E.      Avoiding Unwarranted Sentencing Disparities**

18          The United States' recommended sentence would not cause unwarranted sentencing disparities

19  among defendants found guilty of similar conduct.  In the mid-2000s, there were multiple prosecutions

20  across the country, including in the Northern District of California, that involved the manipulation of

21  monthly price indices for natural gas.  Specifically, traders at several energy companies were charged with

22  manipulating natural gas prices by reporting false information, trade data, and prices to publications that

23  published monthly price indices for natural gas.  While these cases did not involve placing bids or offers

24  in the Platts Window, they did involve substantially similar conduct—namely, submitting false reports to

25  skew the monthly published index prices in order to benefit contracts that were priced based upon the

26  monthly index prices.  In several of the cases charged in this District, defendants cooperated and pled

27  guilty to conspiracy to engage in commodity price manipulation in violation of 18 U.S.C. § 371—the same

28

offense that the defendant pled guilty to in this case. *See, e.g., United States v. Pool*, 04-cr-404 (N.D. Cal.); *United States v. McKenna*, 05-cr-275 (N.D. Cal.); *United States v. Brown*, 06-cr-226 (N.D. Cal.); *United States v. McDonald, et al.*, 06-cr-265 (N.D. Cal.). The defendants in *Pool, Brown,* and *McKenna* all cooperated early in the government's investigation and provided extraordinary cooperation. *See* U.S. Sent. Memo. & § 5K1.1 Mot. for Downward Departure at 7-9, *Pool*, 04-cr-404, ECF No. 36 (N.D. Cal.) (describing the three defendants' cooperation as "early and complete" that "truly 'cracked the case'"). Each of the defendants was sentenced to one-year probation and a $15,000 fine. *See* Minute Entry, *Pool*, 04-cr-404, ECF No. 39 (N.D. Cal.); Minute Entry, *McKenna*, 05-cr-275, ECF No. 45 (N.D. Cal.); Minute Entry, *Brown*, 06-cr-226, ECF No. 39 (N.D. Cal.). For other defendants who pled guilty to the same offense in this District and cooperated (although apparently not to the same extent as in *Pool, Brown*, and *McKenna*)[6], they were sentenced to three-years' probation (with some defendants also being placed under home conferment for part of the probation period) and a $5,000 fine. *See* Judgment, *McDonald, et al.*, 06-cr-265, ECF Nos. 29 (N.D. Cal.) (defendant Whalen, no home confinement), 44 (defendant Atha, 6 months' home confinement) & 47 (defendant McDonald, 9 months' home confinement). For defendants in these natural gas price index manipulation cases who pled guilty outside of this District and cooperated with the government's investigation, they also received substantially reduced sentences, with most receiving probation. *See, e.g.*, Judgment, *United States v. Dean*, 04-cr-450, ECF No. 39 (S.D. Tex.) (2 years' probation); Judgment, *United States v. Guilbault*, 04-cr-451, ECF No. 66 (S.D. Tex.) (5 years' probation, 6 months' home confinement, $10,000 fine), Judgment, *United States v. Ham*, 04-cr-452, ECF No. 57 (S.D. Tex.) (time served); Judgment, *United States v. Bakkenist*, 04-cr-453, ECF No. 59 (S.D. Tex.) (1 year probation, $3,000 fine); *United States v. Danyluk*, 06-cr-212, ECF No. 21 (D. Colo.) (3 years' probation, $3,000 fine); *McLaughlin*, 06-mj-1168, ECF No. 15 (D. Colo.) (1 year probation, 100 hrs. community service, $100 fine).[7] By contrast, defendants with cases outside of this District who

---

[6] The government's sentencing memoranda and motions for downward departure were filed under seal in the *McDonald* case, making it difficult to ascertain the full extent of each defendant's cooperation.

[7] In two cases, it appears the defendants pleaded guilty and cooperated with the government's investigation, but still received a term of imprisonment as part of their sentence. *See* Judgment, *United States v. Geiger*, 02-cr-712, ECF No. 108 (S.D. Tex.) (24 months' imprisonment); Judgment, *United States v. Burwell*, 04-cr-513, ECF No. 95 (S.D. Tex.) (10 months' imprisonment, $4,000 fine). In *Geiger*, however, the defendant had not provided useful information to the government prior to his sentencing, but later provided such information, which resulted in the government moving to reduce the defendant's

pleaded guilty, but did not provide substantial assistant to the government, or who were convicted at trial, received sentences that included significant terms of imprisonment. *See, e.g.*, Judgment, *United States v. Futch*, 04-cr-511, ECF No. 145 (S.D. Tex.) (plea agreement, no 5K1.1 motion, 57 months' imprisonment); Judgment, *United States v. Reed*, 07-cr-216, ECF No. 89 (D. Colo.) (plea agreement, no 5K1.1 motion, 5 months' imprisonment, $6,000 fine); Judgments, *United States v. Phillips, et al.*, 04-cr-512, ECF Nos. 436 (S.D. Tex.) (defendant Walton, convicted at trial, 135 months' imprisonment), 438 (defendant Brooks, convicted at trial, 168 month's imprisonment) & 449 (defendant Phillips, convicted at trial, 135 months' imprisonment); Judgment, *United States v. Valencia*, 04-cr-514, ECF No. 313 (S.D. Tex.) (convicted at trial, 57 months' imprisonment).

In addition to these natural gas price index manipulation cases, more recently, several defendants have been sentenced for manipulating the markets for futures contracts traded on CME Group commodities exchanges. In these cases, the defendants would place large order that they intended to cancel before execution (*i.e.*, spoofing) on one side of the market to artificially push the price towards a genuine order on the opposite side of the market that the trader did intend to execute. While different than the Platts benchmark manipulation at issue in this case, the defendants in the spoofing cases did share a common goal of artificially pushing prices up or down to benefit the defendant and to the detriment of other market participants. In these spoofing cases, like in the earlier natural gas cases discussed above, the defendants that pleaded guilty and cooperated with the government's investigation typically were sentenced to probation or time served. *See, e.g.*, Judgment, *United States v. Sarao*, 15 CR 75, ECF No. 119 (N.D. Ill.) (time served, one-year home confinement); Judgment, *United States v. Zhao*, 18 CR 24, ECF No. 72 (N.D. Ill.) (time served); Judgment, *United States v. Mohan*, 18 CR 610, ECF No. 56 (S.D. Tex.) (1 year probation); Judgment, *United States v. Liew*, 17 CR 1, ECF No. 95 (N.D. Ill.) (time served) *but see* Judgment, *United States v. Gandhi*, 18 CR 609, ECF No. 86 (S.D. Tex.) (24 months' imprisonment).[8]

---

sentence to time served after the defendant had already served approximately 21 months. *See* Govt. Rule 35 Mot. to Reduce Sent., *Geiger*, 02-cr-712, ECF No. 113 (S.D. Tex.). In *Burwell*, the government filed a 5K1.1 motion for a downward departure, requesting that the court depart downward to Offense Level 12 and sentence the defendant at the bottom of the 10-16 month sentencing range (which it did). *See* Govt. 5K1.1 Mot. at 2-3, *Burwell*, 04-cr-513, ECF No. 91 (S.D. Tex.).

[8] In *Gandhi*, the government moved for a downward departure under § 5K1.1, and the Court departed

USA'S SENTENCING MEMORANDUM
3:21-CR-00109 CRB                    -8-

1   The United States' proposed sentence of 24 months' probation, 6 months' home confinement, and

2   a $20,000 fine, therefore, would not result in unwarranted sentencing disparities when compared with

3   similarly-situated cooperating defendants who were sentenced in this District (and elsewhere) for

4   engaging in a conspiracy to manipulate commodity prices.

5   **F.    Restitution**

6   In the defendant's Plea Agreement, the United States and the defendant agreed that the amount of

7   loss resulting from the offense could not reasonably be determined, and therefore the parties believed there

8   was no basis for an order of restitution. *See* Plea Agr. ¶ 18.  Presently, based on the information available

9   to the United States, it continues to appear that restitution is not appropriate because any potential victim

10  losses either have otherwise been resolved, or are not reasonably calculable and would unduly prolong

11  and complicate sentencing in this matter. *See* 18 U.S.C. § 3663.  To that end, the United States is aware

12  of two categories of potential victims, the first of which has settled its claims with Glencore, and for the

13  second, the United States lacks the information necessary to assess and calculate any restitution.

14  In the first category, PMI and its parent corporation, PEMEX, appeared in connection with

15  Glencore's guilty plea in a related matter and asserted that they considered themselves victims entitled to

16  restitution.[9]  Ultimately, PMI, PEMEX, and Glencore reached a confidential, negotiated resolution of

17  PMI's and PEMEX's restitution claims. *See* Notice, *United States v. Glencore*, 3:22-cr-00071, ECF No.

18  58 (D. Conn. Sept. 12, 2022).  Any alleged losses, therefore, are being addressed outside the context of

19  this case, and there is no basis for a restitution order to PMI or PEMEX.

20  In the second category, it would be exceeding difficult to identify other persons or entities harmed

21  by the defendant's manipulation, much less perform the corresponding calculation of losses, which

22  resulted in the parties' agreement that loss cannot reasonably be determined.  The potential universe of

23  such victims could include anyone active in the L.A. Bunker Fuel market at any point during the multi-

24  year conspiracy, and the calculation of their potential losses would be a fact- and data-intensive exercise

25  for each separate claimant.  In any event, no such claimants have identified themselves to the United States

26

27  downward significantly from a sentencing Guidelines range of 87 to 108 months.

28  [9] For reference, in the Statement of Facts to Glencore Ltd.'s plea agreement in the related matter, PMI is referred to as Trading Firm A and PEMEX is referred to as National Oil Company A.

USA'S SENTENCING MEMORANDUM
3:21-CR-00109 CRB                    -9-

1  either in connection with this matter or in connection with Glencore's guilty plea in the related criminal

2  case filed in May 2022, *United States v. Glencore Ltd.*, 3:22-cr-00071 (D. Conn.).  Thus, there is no basis

3  for a restitution order in this case.[10]

4  **IV.    Sentencing Recommendation**

5         Based on the defendant's decision to accept responsibility and cooperate with the United States,

6  the substantial assistance he has provided to the United States' investigation, and to avoid sentencing

7  disparities between similarly-situated defendants, the United States respectfully recommends that the

8  Court impose a sentence of 24 months' probation, 6 months' home confinement, and a $20,000 fine on

9  the defendant.  The Court should not order restitution or forfeiture.  Finally, the defendant must be ordered

10  to pay the $100 special assessment.

11

12  Dated: March 15, 2023                                     GLENN S. LEON
                                                              Chief, Fraud Section
13                                                            Criminal Division
                                                              U.S. Department of Justice
14

15                                                            AVI PERRY
16                                                            Deputy Chief

17                                                            MATTHEW F. SULLIVAN
                                                              JOHN J. LIOLOS
18                                                            Trial Attorneys

19

20

21

22

23

24

25

26

_____

27  [10] In connection with Glencore's sentencing as part of its guilty plea, the Court did not order restitution, noting that Glencore had settled with one potential victim and other victims cannot reasonably be identified and have not come forward with claims.  *See* Statement of Reasons VII(C)(6), *United States v.*
28  *Glencore*, 22-cr-71, ECF No. 64 (D. Conn. Oct. 4, 2022).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I, Matthew F. Sullivan, hereby certify that on March 15, 2023, I caused the foregoing filing to be electronically filed with the Clerk of Court by using the Court's electronic filing system, which will automatically send a notice of electronic filing to the parties who have entered an appearance in this case.

 /s/ *Matthew F. Sullivan*
Matthew F. Sullivan